UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DANIEL P. HARGROVE,<br>Plaintiff,<br><br>vs.<br><br>CO HOLLEY, et al.,<br>Defendants. | Case No. 1:17-cv-560<br><br>Black, J.<br>Litkovitz, M.J.<br><br>**ORDER AND REPORT<br>AND RECOMMENDATION** |

Plaintiff, an inmate at the Lebanon Correctional Institution (LeCI) in Lebanon, Ohio, has filed a pro se civil rights complaint under the Civil Rights Act of 1871, 42 U.S.C. § 1983, against defendants "CO Holley," "LT Flowers," the "Warden," "Ms. Meyers," "LT Hubbert," "Timothy Heyd, M.D.," and "State of OH/C.C.A." (Doc. 3, at PageID 12). Plaintiff has also filed two supplemental pleadings. (Docs. 7 & 8). The Court construes the first supplemental pleading (Doc. 7) as an amended complaint,[1] clarifying plaintiff's claims and adding "Mr. Kasich" as a defendant.[2] The Court construes plaintiff's second supplemental pleading (Doc. 8) as a motion to amend the complaint a second time to add new defendants and claims and a motion for preliminary injunction. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis*.

This matter is before the Court for a *sua sponte* review of the amended complaint (Doc. 7) to determine whether the amended complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks

---

[1]Plaintiff's amended complaint supersedes plaintiff's original complaint for all purposes. *See In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013); *see also Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n. 4 (2009).

[2]The amended complaint, unlike the original complaint, does not include "C.C.A." as a defendant in the case caption. However, in the body of the amended complaint, plaintiff alleges that "all proceeds will come from the treasuries of the State of OH or C.C.A." (Doc. 7, at PageID 28). From this language, the Court presumes that plaintiff still intends to include C.C.A. as a defendant in the amended complaint.

monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). Also before the Court are plaintiff's motions to amend the complaint a second time and for preliminary injunction. (*See* Doc. 8).

I.  **Screening of Amended Complaint (Doc. 7)**

   A.  **Legal Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin,* 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke,* 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a

2

claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B. Allegations in Amended Complaint (Doc. 7)

In his amended complaint, plaintiff alleges that on July 1, 2017, at 11:50 a.m., while he was asleep in his cell in R-block, his cellmate "attack[ed] him and bit[] his right ear off or half of it and pulled his right eye out of socket." (Doc. 7, at PageID 25). At the time of the alleged attack, plaintiff claims, "only one officer [Holley] was working in R-block." (*Id.*). Plaintiff further claims that "the cells had no emergency call system." (*Id.*). According to plaintiff, he told Holley before the alleged attack "about the differences the plaintiff and his cell-mate had." (*Id.*). Plaintiff asserts that Holley "failed to stop the attack, he was just standing there watching." (*Id.*). Plaintiff also claims that Hubbert, "the supervisor that[']s over the hole, R-block," should have moved plaintiff out of the cell the day before the attack "after [Hubbert] was told about [the] cell-mate[']s constant ejackulation [sic] in the cell while the plaintiff was in the cell with him." (*Id.*, at PageID 27).

Plaintiff claims that Holley's actions violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. (*Id.*, at PageID 25). Plaintiff also claims that Holley "lied under oath" in a Conduct Report by stating that plaintiff admitted that he and his cellmate were fighting when the attack occurred. (*Id.*). Plaintiff claims that Hubbert's failure to move plaintiff out of his cell the day before the alleged attack was negligent and "showed a great deal of incompetence." (*Id.*, at PageID 27).

Plaintiff claims that the Warden was negligent in not having emergency call buttons in the cells in R-block (*id.*, at PageID 25) and that Kasich was "negligent grossly for failing to abide by it's [sic] contract in keeping everyone safe" (*id.,*, at PageID 25). Plaintiff also claims, without elaboration, that the Warden was negligent "in not dealing with the infestation of the roaches, mice, and the water pollution and the sprinkler systems throughout the institution and

4

mainly in R-block." (*Id.*, at PageID 27). According to plaintiff, Kasich "is grossly negligent too by not fixing or dealing with infestations and water treatment." (*Id.*, at PageID 28). Plaintiff further claims that the Warden retaliated against him by "denial of the petitioner's state pay and . . . blocking the plaintiff's legal mail." (*Id.*, at PageID 27).

Plaintiff next alleges that on August 8, 2017, Lauren A. Chalupa of Legal Services, who is not named as a defendant in this action, "reversed the plaintiff's extended restricted housing case, SMP LECI-17-006028," but Flowers "has refused to transfer the plaintiff to another level 3 which is required by contract." (Doc. 7, at PageID 26). Plaintiff also alleges that he has been in the "hole" sixty-eight days in violation of the Eighth Amendment. (*Id.*).

Further, plaintiff alleges that Flowers "has deliberately acted in a way to segregate and prevent the plaintiff from exercising rights guaranteed to all and receiving all legal materials that[']s needed for legal purposes." (*Id.*). Plaintiff also claims that Flowers "deliberately blocked" the grievance procedure in R-block. (*Id.*). Plaintiff alleges that Meyers "blocked" him from "obtaining a formal complaint and from appealing in accordance with the Prison Litigation Reform Act of 1995." (*Id.*). Plaintiff asserts that Meyers "is the sole reason the grievance procedure is being blocked." (*Id.*, at PageID 27).

Plaintiff alleges that Heyd, "an M.D. at Ohio State University Medical Center,"[3] was "grossly negligent by not giving [plaintiff] proper pain medications after surgery" on his eye and ear. (Doc. 7, at PageID 27-28). According to plaintiff, Heyd "didn't give the plaintiff any" pain medication. (*Id.*, at PageID 28). Plaintiff further claims that "[t]he institution's

---

[3]The Ohio State University Medical Center (OSUMC) is considered an arm of the state for purposes of 42 U.S.C. § 1983. *See Boggs v. State*, 455 N.E.2d 1286, 1287 (Ohio 1983) (finding that the OSUMC is an instrumentality of the State of Ohio); *Thacker v. Bd. of Tr. of Ohio State Univ.*, 298 N.E.2d 542, 544 (Ohio 1973) (finding that the Ohio State University and the OSUMC are instrumentalities of the State of Ohio), *overruled in part on other grounds by Schenkolewski v. Cleveland Metroparks Sys.*, 426 N.E.2d 784 (Ohio 1981); *Wolf v. Ohio State Univ. Hosp.*, 162 N.E.2d 473, 478 (Ohio 1959) (same).

5

medical doctor," who is not named as a defendant in the lawsuit, "was notified but didn't give [plaintiff] any [pain medication] either." (*Id.*).

Plaintiff does not expressly allege any wrongdoing on the part of defendants State of Ohio or C.C.A. (*See* Doc. 7, at PageID 28). However, "plaintiff contends [that] all proceeds will come from the treasuries of the state of OH or C.C.A. if it's determined by this Court that the defendant[s] are or were working under the color of state law." (*Id.*).

As relief, plaintiff seeks monetary damages against the defendants. (*See* Doc. 7, at PageID 28).

C.  **Analysis**

Liberally construed, plaintiff's amended complaint states an Eighth Amendment claim for failure to protect against defendants Holley and Hubbert and for deliberate indifference to his serious medical needs against defendant Heyd. At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that these claims are deserving of further development and may proceed at this juncture. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). However, plaintiff's remaining claims should be dismissed for failure to state a claim upon which relief may be granted.

First, plaintiff's claims against the State of Ohio must be dismissed. Any form of relief sought against a State in federal court is barred under the Eleventh Amendment unless the State has expressly waived its sovereign immunity. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). Ohio has neither statutorily nor constitutionally waived its sovereign immunity in federal court. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (citing *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th

Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982)); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976). Thus, plaintiff's claims against the State of Ohio are barred by the Eleventh Amendment.

Next, plaintiff's claims against the individual defendants in their official capacities must be dismissed to the extent that plaintiff seeks monetary damages. An action against a state official in his or her official capacity is the equivalent of an action against the State he or she represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, all the individual defendants in their official capacities are immune from suit to the extent that plaintiff seeks monetary damages.

Plaintiff's claims should also be dismissed against defendant Kasich and any other defendant plaintiff seeks to sue under a *respondeat superior* theory. Plaintiff does not allege any personal involvement on Kasich's part. It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Therefore, plaintiff's claims should be dismissed against Kasich and any other

defendant that plaintiff seeks to hold liable under a *respondeat superior* theory.

Plaintiff's claims against the Warden should be dismissed. Plaintiff essentially argues that the Warden failed to protect the plaintiff by not equipping his cell with an emergency call button and by "not dealing with" alleged pest infestations, water pollution, and fire hazards at LeCI (*see* Doc. 7, at PageID 25, 27). However, plaintiff has not pled sufficient factual content for the Court to infer that the Warden knew of and deliberately disregarded any serious risk to plaintiff's health and safety by virtue of these alleged conditions. *See Griffin v. Collins*, No. 2:09-cv-210, 2010 WL 2605835, at *1 (S.D. Ohio June 28, 2010) (explaining that to state an Eighth Amendment deliberate indifference claim, "[t]he alleged deprivation must be, objectively, 'sufficiently serious' and the prison official must be, subjectively, deliberately indifferent to inmate health or safety") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006)). Plaintiff's First Amendment retaliation claim against the Warden likewise fails to state a claim for relief because plaintiff alleges only that an adverse action has been taken against him (*see* Doc. 7, at PageID 27), but fails to allege that he engaged in any constitutionally protected conduct or that such conduct prompted the adverse action allegedly taken against him. *Twombly*, 550 U.S. at 557, *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (setting forth the elements of a First Amendment retaliation claim).

Plaintiff's claim that Holley falsely wrote a conduct report against him is also subject to dismissal for failure to state a claim upon which relief may be granted. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional

right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Id.* at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). Plaintiff's allegations are insufficient to trigger constitutional concerns because he has failed to allege facts suggesting that he was deprived of a protected liberty interest without due process.

Plaintiff's claim that Flowers failed to transfer him to "another level 3" prison is also insufficient to state a viable claim under § 1983. "Prisoners do not have a constitutional right to be incarcerated in any particular institution." *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Plaintiff's allegation that Flowers was "required by contract" (Doc. 7, at PageID 26) to transfer him is merely conclusory and thus insufficient to identify a liberty or property interest in being transferred. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 557.

Nor does plaintiff's alleged confinement in the "hole" for sixty-eight days state an Eighth Amendment Claim. "The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain." *Estep v. Million*, No. 98-6322, 1999 WL 776202, at *1 (6th Cir. Sept. 24, 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). "To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities." *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Further, plaintiff's conclusory allegations regarding the conditions at LeCI fail to present facts from which the Court can infer that plaintiff was deprived of the minimum civilized measures of life's necessities in the "hole." *See Iqbal*,

556 U.S. at 678; *Twombly*, 550 U.S. at 555, 557.

Plaintiff's claim that he was prevented by Flowers "from exercising rights guaranteed to all and receiving all legal materials" (Doc. 3, at PageID 13) appears to allege that plaintiff has been denied access to the courts. "The United States Supreme Court has established that, in order to have standing to bring a claim of denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial." *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing (*Lewis v. Casey*, 518 U.S. 343, 350-51 (1996)). "[A]n inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Id.* (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Plaintiff fails to allege that he suffered any actual injury as a result of Flowers's alleged actions. Absent such allegations, plaintiff's complaint fails to state a claim for relief for a denial of access to the courts.

Plaintiff's claims that Flowers and Meyers prevented him from filing grievances should be dismissed because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations omitted).

Plaintiff's claims against C.C.A. should be dismissed because he has not alleged that he was injured by any policy or custom of C.C.A. *See, e.g., Grayson v. Corr. Corp. of Am.*, No. 1:12-cv-63, 2012 WL 2022440, at *4 (E.D. Tenn. June 5, 2012).

## II. Analysis of Pending Motion to Amend (Doc. 8)

Plaintiff seeks to amend his complaint for a second time to: (1) name Kasich, whom plaintiff previously named as a defendant in his first amended complaint (*see* Doc. 7), and "Mr. German," whom plaintiff claims is in the "education department" at LeCI, as defendants;

(2) add First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claims against Kasich, German, and the Warden; and (3) add a new retaliation claim against the Warden. (Doc. 8, at PageID 29-30). Plaintiff seeks monetary damages against Kasich and monetary and injunctive relief against German and the Warden. (*See id.*, at PageID 30).

### A.  Proposed First Amendment and RLUIPA Claims

As an initial matter, there is no cause of action for damages under RLUIPA. *See Hendricks v. Aramark, Inc.*, No. 2:14-cv-2015, 2015 WL 1809361, at *4 (S.D. Ohio Apr. 21, 2015) (citing cases). Plaintiff's RLUIPA claim against Kasich should therefore be dismissed in its entirety. Further, as set forth above, the Eleventh Amendment protects the defendants from damages liability to the extent that plaintiff seeks to bring his newly proposed First Amendment claims against them in their official capacities. *See Hafer*, 502 U.S. at 25; *Will*, 491 U.S. at 70-71.

Further, plaintiff's allegations in support of his proposed First Amendment Free-Exercise and RLUIPA claims fail to state a claim for relief. "Under § 1983, 'a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)). The prisoner must also show that the challenged conduct infringes upon his sincerely held beliefs. *Kent v. Johnson*, 821 F.2d 1220, 1225 (6th Cir. 1987). "A practice will not be considered to infringe on a prisoner's free exercise unless it 'place[s] a substantial burden on the observation of a central religious belief or practice.'" *Blair v. Thompson*, No. 5:16-cv-P35, 2017 WL 161638, at *10 (W.D. Ky. Jan. 13, 2017) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). An action imposes a substantial

11

burden "when that action forced an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Barhite*, 377 F. App'x at 511 (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007)). If the plaintiff makes these showings, "[t]he next step in the proper analysis is to inquire whether the challenged practice of the prison officials furthers some legitimate penological objective." *Kent*, 821 F.2d at 1225.

To state a claim under RLUIPA, an "inmate must first demonstrate that a prison policy substantially burdens a religious practice." *Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).[4] RLUIPA provides:

> [n]o government shall impose a substantial burden on the religious exercise of a person . . . confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The term "government" includes states, their agencies and departments, and persons acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4)(A). "RLUIPA thus requires an inmate to show that his or her religious exercise was substantially burdened." *Barhite*, 377 F. App'x at 511. Under RLUIPA, the term "substantial burden" is given the same meaning as under the First Amendment. *See Living Water Church of God*, 258 F. App'x at 733-34.

Plaintiff supports his Free-Exercise and RLUIPA claims with the following allegations:

The plaintiff contends, the Warden and Mr. German in the education department

---

[4] Unlike the First Amendment, "religious exercise" under RLUIPA "encompasses '*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Muslim Cmty. Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp.2d 752, 769 (E.D. Mich. May 22, 2013) (quoting 42 U.S.C. § 2000cc-5(7)(a) (emphasis original)).

12

has put the plaintiff back in the hole for not attending government schooling in violation of RLUIPA and the 1st Amendment. The plaintiff contends education without his curriculum, Islamic, curriculum is an [sic] violation of the aforementioned and education is always an [sic] Religious matter. The Warden has told Mr. German to write the Plaintiff conduct reports for not going which violates the 1st Amendment. The [Department of Corrections] nor the Warden nor the governor don't have subject matter jurisdiction nor personal jurisdiction to mandate religious matters such as education.

(Doc. 8, at PageID 29).[5] According to plaintiff, Kasich mandated the prison policy at issue. (*Id.*, at PageID 30).

Even if this Court assumes that plaintiff's religious beliefs are sincerely held, plaintiff has failed to allege facts from which this Court can reasonably infer that the alleged policy of mandatory schooling substantially burdens plaintiff's religious beliefs. Plaintiff does not expressly plead that the policy at issue substantially burdens his religious beliefs and plaintiff's allegation that he is compelled to attend schooling "without his [Islamic] curriculum" is too vague and conclusory to support such an inference. *See Twombly*, 550 U.S. at 557 (explaining that a complaint must provide more than "naked assertion[s]" devoid of "further factual enhancement."). Having failed to plead facts showing that his religious beliefs are being substantially burdened, plaintiff has failed to state a plausible First Amendment or RLUIPA claim. *See Hernandez*, 490 U.S. at 699 (stating elements of First Amendment Free exercise claim); *Haight*, 763 F.3d at 559-60 (setting forth elements of RLUIPA claim).

**B.    Proposed First Amendment Retaliation Claim**

Nor does plaintiff's new retaliation claim against the Warden state a claim for relief. Plaintiff alleges that he is being issued conduct reports for not attending school based on LeCI policy mandating attendance at school. (*See* Doc. 8, at PageID 29-30). Plaintiff, however,

---

[5]Plaintiff does not name the Ohio Department of Corrections as a defendant in this lawsuit. Moreover, suit against the Ohio Department of Corrections is barred by the Eleventh Amendment. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the state] has consented to the filing of such a suit.").

does not allege facts to support an inference of a retaliatory motive. *See Figel v. Overton*, 121 F. App'x 642, 647-48 (6th Cir. 2005) (finding that a plaintiff failed to state a claim for retaliation because "the fact that Defendants applied a pre-existing policy directive to prohibit [the plaintiff's] receipt of [allegedly religious] books after [the plaintiff] filed grievances and litigation against Defendants, does not indicate a retaliatory motive in the absence of any evidence demonstrating that the policy was not applied to [the] Plaintiff in an even-handed manner.")

Because plaintiff's proposed second amendment to his complaint seeks to add claims that are subject to dismissal for failure to state a claim to relief, the motion to amend should be denied as futile. *See, e.g., Milstead v. Bedford Cty. Sheriff's Dep't*, No. 4:12-cv-52, 2014 WL 420395, at *9 (E.D. Tenn. Feb. 4, 2014) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)).

### III. Analysis of Motion for Preliminary Injunction (Doc. 8)

Plaintiff seeks an injunction to accomplish his "emergency transfer" to another prison, alleging that if he stays at LeCI "he will be subject to constant harassment by this Warden and retaliation." (Doc. 8, at PageID 30). In determining whether to issue a preliminary injunction, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction

14

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 347 (6th Cir. 1998); *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 n.3 (6th Cir. 1991). The four factors are not prerequisites, but must be balanced as part of a decision to grant or deny injunctive relief. *Leary*, 228 F.3d at 736; *Performance Unlimited v. Quester Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief" and proof that the circumstances clearly demand it. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted); *Leary*, 228 F.3d at 739.

The Court finds that plaintiff has neither alleged facts, nor submitted any evidence whatsoever, warranting a preliminary injunction in this matter. Plaintiff has made no attempt to apply the above factors to his situation. Plaintiff has failed to present any evidence showing he has a substantial likelihood of success on the merits of his constitutional claims, or that he will suffer irreparable harm absent a preliminary injunction. Plaintiff's allegations in his motion do not constitute evidence supporting injunctive relief. In the absence of any evidence supporting plaintiff's motion, the motion should be denied.

A preliminary injunction is also not warranted in this case because the purpose of a preliminary injunction—to preserve the status quo until a trial on the merits can be held—would not be served. *Great Lakes Brewing Co.*, 860 F.3d at 848; *Martin*, 924 F.2d at 102. The present status quo in this case is, according to plaintiff, that he has suffered numerous violations of his constitutional rights. The remedy plaintiff presently seeks, a transfer to another prison, is more than an injunction maintaining the status quo; he seeks an Order from this Court requiring

defendants to affirmatively correct constitutional deficiencies yet to be proven. Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief. *See id*.

**IT IS THEREFORE RECOMMENDED THAT:**

The amended complaint (Doc. 7) be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's Eighth Amendment individual capacity claim for failure to protect against defendants Holley and Hubbert and his Eighth Amendment individual capacity claim for deliberate indifference to his serious medical needs against defendant Heyd.

It is further recommended that plaintiff's motions to amend his complaint a second time and for preliminary injunction (Doc. 8) be **DENIED**.

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the amended complaint, summons, the separate Order issued granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants C.O. Holley, LT Hubbert, and Timothy Heyd, M.D.

2. Plaintiff shall serve upon defendant or, if appearance has been entered by counsel, upon defendant's attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may

occur during the pendency of this lawsuit.

Date: 10/31/17

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DANIEL P. HARGROVE,<br>Plaintiff,<br><br>vs.<br><br>CO HOLLEY, et al.,<br>Defendants. | Case No. 1:17-cv-560<br><br>Black, J.<br>Litkovitz, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).