# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIEL P. HARGROVE,
Plaintiff,

vs.

C.O. HOLLEY, et al.,
Defendants

Case No. 1:17-cv-560
Cole, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff, a former inmate at Lebanon Correctional Institution ("LeCI"), brings this civil

rights action under 42 U.S.C. § 1983 against defendants alleging violations of his Eighth

Amendment rights for failing to protect him from an attack by a fellow inmate and for deliberate

indifference to his medical needs. This matter is before the Court on defendant Holley's motion

for summary judgment (Doc. 55), plaintiff's response in opposition (Doc. 57), defendant

Holley's reply memorandum (Doc. 60), and plaintiff's supplemental memorandum (Doc. 61).[1]

## I. Procedural Background

Plaintiff was granted leave to proceed *in forma pauperis* and initiated this action on

August 25, 2017. (Docs. 1, 3). On October 31, 2017, the undersigned conducted a *sua sponte*

review of plaintiff's amended complaint (Doc. 7) under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1). The undersigned recommended that plaintiff could proceed with his Eighth

Amendment individual capacity claim for failure to protect against defendants Holley and

Hubbard and his Eighth Amendment individual capacity claim for deliberate indifference to his

---

[1] The Court notes that plaintiff's supplemental memorandum was filed in violation of S.D. Ohio Local Civil Rule 7.2(a)(2) because plaintiff neither sought leave of court nor showed good cause for the filing of his supplemental memorandum in response to defendant's reply. However, given plaintiff's pro se status and that defendant's reply memorandum raises new arguments on the issue of exhaustion of administrative remedies, the Court will consider plaintiff's supplemental memorandum.

serious medical needs against defendant Heyd. (Doc. 10 at 16). On December 27, 2017, the District Judge adopted the Report and Recommendation. (Doc. 17).

On January 19, 2018, defendants Holley and Hubbard filed a motion to dismiss. (Doc. 24). On August 1, 2018, the Court recommended granting the motion to dismiss as to defendant Hubbard and denying the motion as to defendant Holley. (Doc. 46). On August 22, 2018, the District Judge adopted the Report and Recommendation. (Doc. 48). Therefore, the sole remaining defendants in this case are defendant Holley and defendant Heyd.

## II. Facts

This lawsuit arises out of an incident that occurred at LeCI on July 1, 2017. Defendant Correctional Officer Brian Holley was working in the restrictive housing unit ("R block") with another officer at LeCI. (Holley Declaration, Doc. 55-1 at ¶¶ 4, 5). As the regular R block officer, defendant Holley was sitting at his desk when his inmate porter came to tell him that "there was something going on upstairs." (*Id.* at ¶ 9). Defendant Holley immediately went upstairs to cell 2R14 to assess the situation. (*Id.* at ¶ 10). When he arrived at the cell that housed plaintiff and his cellmate, Inmate Pickens, defendant Holley observed one inmate on top of the other on the bottom bunk. (*Id.* at ¶ 11). The inmate on top had his arms underneath the other inmate's body, as if they were in a bear hug or wrestling-type move. (*Id.* at ¶ 12). Inmate Pickens stated that plaintiff would not let him go. (*Id.* at ¶ 13). According to defendant Holley, the attack "was completed" when he arrived at the cell front, and he only observed plaintiff and Inmate Pickens in a wrestling-type hold. (*Id.* at ¶ 14). Defendant Holley was unsure whether the inmates were involved in a physical altercation or whether "there was a medical situation such as one inmate trying to control another's seizure." (*Id.* at ¶ 15). Defendant Holley never saw punches being thrown. (*Id.* at ¶ 17). Defendant Holley opened the food-cuff port and

commanded both inmates to separate, threatening to use OC spray if they did not comply. (*Id.* at ¶ 18). Plaintiff released Inmate Pickens from the hold, and Inmate Pickens stepped to the side. (*Id.* at ¶ 19). Plaintiff disputes the actions taken by defendant Holley. (Doc. 57 at 3).[2] According to plaintiff, defendant Holley "was just standing waiting on help to come, instead of getting this guy's teeth out of the plaintiff's ear and being on the job." (*Id.*).

About fifteen seconds after arriving at the cell door and assessing the situation, defendant Holley called for restraints, a relief officer, and a supervisor to respond to his location. (Holley Declaration at ¶¶ 20-21). Plaintiff, however, states that it took "about an hour" for Inmate Pickens to be subdued. (Doc. 57 at 3). Defendant Holley placed Inmate Pickens in handcuffs and told him to step back. (Holley Declaration at ¶ 22). He instructed plaintiff to come to the cuff port, and plaintiff initially refused to put his hands in restraints but eventually complied. (*Id.* at ¶ 23). Defendant Holley observed that plaintiff had a t-shirt wrapped around his head covering his ear and noticed that plaintiff's ear had been partially bitten off. (*Id.* at ¶ 24). Defendant Holley opened the cell door once both inmates were in handcuffs and a second officer and supervisor were present. (*Id.* at ¶ 27). According to defendant Holley, "[i]nstitutional security procedures do not permit an officer to open a cell door in R block without another officer present and without the inmates in restraints." (*Id.*). Relief Officer Justin McNally responded to defendant Holley's call for assistance and arrived at the cell within approximately three minutes. (*Id.* at ¶ 28; McNally Declaration, Doc. 55-2 at ¶ 7). Officer McNally observed that plaintiff and Inmate Pickens were already separated and witnessed defendant Holley open the cell door as soon as he and a supervisor arrived. (McNally Declaration at ¶ 8). Both inmates were escorted to the infirmary. (Doc. 55-3 at 1).

---

[2] Plaintiff's response in opposition is verified under penalty of perjury and therefore satisfies his burden to respond to defendant's motion for summary judgment. (Doc. 57 at 6).

## III. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Matson v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.

2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Matson*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## IV. Exhaustion of Administrative Remedies

### A. Legal Standard

Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act ("PLRA") and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. §1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA." *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.*

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The PLRA specifies that inmates must exhaust all "available" administrative remedies. Thus, courts may excuse the failure to exhaust if they determine that administrative remedies were unavailable. Administrative remedies may be unavailable when they would "deter a person of ordinary firmness from [continuing with the grievance process]." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)), *aff'd on other*

gds., *Simmons v. Himmelreich*, 136 S. Ct. 1843 (2016). The U.S. Supreme Court has defined the term "available" as being "capable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). Examples of circumstances where remedies are considered "unavailable" include: when it operates as a dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; when the administrative scheme is so difficult to understand that no ordinary prisoner can navigate it; or when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation. *Id.*

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

**B. Resolution**

Defendant Holley argues that plaintiff failed to exhaust his administrative remedies by filing an informal complaint or grievance regarding the July 1, 2017 incident with Inmate Pickens. (Doc. 55 at 10). In support, defendant Holley provides the affidavit of ODRC Assistant

Chief Inspector Antonio Lee, who is a custodian of grievance records. (Lee Declaration, Doc. 55-6). Mr. Lee attests that he reviewed plaintiff's grievance file to determine if plaintiff had submitted any grievances related to a complaint of any ODRC employee failing to protect him during an incident on July 1, 2017 where he was allegedly assaulted by his cellmate. (*Id.* at ¶ 10). Mr. Lee attests that plaintiff filed no grievances, informal complaints, or appeals that mention being assaulted or that ODRC staff failed to protect him. (*Id.* at ¶ 11). Mr. Lee further attests that plaintiff filed no grievances, informal complaints, or appeals whatsoever in July or August 2017. (*Id.*).

In response, plaintiff contends that inmates in restrictive housing are unable to exhaust their administrative remedies because there are no computers and the guards informed inmates that filing grievances "was a security hazard." (Doc. 57 at 2). Plaintiff also alleges that paper grievances are thrown in the trash. (*Id.*).

On this record, defendant has submitted evidence of non-exhaustion that "no reasonable jury would be free to disbelieve." *Surles*, 678 F.3d at 455-56. Based on the Lee declaration and plaintiff's own admission in response to defendant's motion for summary judgment that he did not exhaust his administrative remedies with respect to the July 1, 2017 incident, no reasonable jury could find in his favor on the issue of exhaustion. Nevertheless, plaintiff contends that LeCI institutional procedures effectively blocked him from exhausting his administrative remedies because the restrictive housing unit lacks computers and paper grievances are thrown in the trash. (Doc. 57 at 2). Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner "has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his

administrative remedies." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014).

Plaintiff has failed to create a genuine dispute of fact that administrative remedies were unavailable to him. A prisoner who simply alleges that prison officials did not provide him with the proper paperwork to follow administrative procedures does not demonstrate a genuine issue of material fact that he was prevented from exhausting his administrative remedies. *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001). Rather, a prisoner must present evidence "that there was no other source for obtaining a grievance form or that he made [another] attempt to obtain a form or to file a grievance without a form." *Id.* Here, plaintiff has presented no evidence that there was no other source for obtaining a grievance form, that he made more than one attempt to obtain a form, or that he attempted to file a grievance without a form. *Jones*, 266 F.3d at 400. Nor has he demonstrated that he could *only* file a grievance with a computer, which he states were unavailable in the restrictive housing unit. On the contrary, defendant has presented evidence that inmates housed in restrictive housing have access to paper copies of informal complaint resolutions and computer kiosks are not available for grievance filings in the restrictive housing unit because of the level of inmate turnover and safety concerns. (Declaration of Lora Austin, Inspector of Inmate Services at LeCI, Doc. 60-1 at ¶¶ 12-13). Moreover, in July 2017, inmates at LeCI had multiple avenues to acquire and complete informal complaint resolution forms, including (1) requesting an informal complaint form from officers on either first, second, third, or fourth shift, (2) picking up an informal complaint form from his block because all blocks possessed informal complaint forms, (3) kiting the institutional inspector to request an informal complaint form, (4) requesting an inmate porter to retrieve an informal complaint form, or (5) requesting an informal complaint form from the block Sergeant, who is

required to make rounds every day. (*Id.* at ¶ 10). Thus, if plaintiff experienced problems with requesting or submitting an informal complaint form from a correctional officer, there were four other avenues that he could have pursued to obtain the form. (*Id.* at ¶¶ 10-11). Plaintiff has not presented evidence to show that he exhausted all available options when attempting to request or file an informal complaint.

To the extent plaintiff suggests he was thwarted from accessing the grievance process, he has failed to establish a genuine issue of fact in this regard. Plaintiff has failed to show that prison officials blocked his efforts to exhaust his administrative remedies by throwing paper grievances in the trash. Plaintiff has adduced no evidence that he tried to file an informal complaint in relation to the July 1, 2017 altercation and the informal complaint was actually thrown in the trash. Any allegation that prison officials generally had a practice of throwing grievances in the trash such that it would be futile to file one is insufficient to establish that prison officials thwarted plaintiff's attempts to file an informal complaint in relation to the July 1, 2017 altercation. *See Lee v. Freeman*, No. 16-14162, 2017 WL 4158794, at *4 (E.D. Mich. Aug. 25, 2017) (Report and Recommendation) ("An argument that it would have been futile to file a grievance does not suffice.") (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), *adopted*, 2017 WL 4150789 (E.D. Mich. Sept. 19, 2017)). In addition, defendant has presented evidence that plaintiff filed informal complaint resolutions and participated in the grievance procedures on multiple occasions while in restrictive housing in June 2017. (Austin Declaration at ¶ 17; Inmate Grievance History for Daniel Hargrove, Doc. 60-2). Plaintiff's own conduct in prior filings demonstrates that administrative remedies were available to him and that he was capable of using them. *See Blissit v. Fiquris*, 345 F. Supp. 3d 931, 940 (S.D. Ohio 2018). Plaintiff alleges in his supplemental memorandum that he was only able to file grievances in

10

Buildings C and K but not in Buildings L or M, which are the "lock-down," restrictive housing buildings. (Doc. 61 at 2). However, plaintiff's unsworn assertions about the lack of grievances in restrictive housing are insufficient to dispute the evidence presented by defendant that inmates in restrictive housing had access to paper grievance forms and had five methods of requesting and submitting such forms. (*See* Austin Declaration, Doc. 60-1 at ¶¶ 10, 12).

Accordingly, defendant Holley's motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies should be granted. However, in the event that the recommendation on the exhaustion issue is not adopted, the Court will also consider the parties' arguments on the merits of plaintiff's Eighth Amendment claims.

## V. Failure to Protect Claim against Defendant Holley

### A. Legal Standard

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from harm, a plaintiff must present evidence showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm. *Farmer*, 511 U.S. at 837. *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). Deliberate indifference includes both objective and subjective elements. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). The objective element requires the harm to be "sufficiently serious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. The subjective element focuses on whether prison officials know that inmates face a substantial risk of harm and "disregard[] that risk by failing to take reasonable

11

measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id*. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id.*

### B. Resolution

Defendant Holley argues that summary judgment should be granted in his favor because plaintiff cannot satisfy the objective or subjective components of his Eighth Amendment failure to protect claim. Defendant Holley argues that plaintiff failed to alert him to a specific safety threat posed by his cellmate. (Doc. 55 at 12). Defendant Holley further argues that plaintiff fails to meet the subjective component of his failure to protect claim because the evidence shows that he "acted quickly to evaluate the situation, separate the inmates, call for handcuffs and assistance, and remove the inmates from the cell as soon as procedure allowed." (*Id.* at 15).

After conducting a thorough review of the evidence of record, the Court finds that summary judgment should be granted to defendant Holley on plaintiff's Eighth Amendment claims because no genuine dispute exists as to whether defendant Holley failed to protect plaintiff from an attack by inmate Pickens.

As a matter of law, plaintiff has failed to satisfy the objective component of his Eighth Amendment failure to protect claim and failed to show that he was exposed to a substantial risk of serious harm as a result of being housed with Inmate Pickens. In his memorandum in opposition to defendant Holley's motion for summary judgment, plaintiff states under penalty of perjury that he informed defendant Holley before the July 1, 2017 incident that Inmate Pickens was "ejaculating [sic]" in their shared cell in his presence. (Doc. 57 at 4-5). Plaintiff argues

that "a reasonable person would have known to move someone who's ejaculating [sic] on his cellmate." (*Id.* at 4). However, to establish the objective component of his Eighth Amendment claim, plaintiff must present evidence of more than a "hypothetical risk of danger to his safety prior to the attack." *Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001). The fact that plaintiff was housed with an inmate who engaged in unwelcome acts of sexual nature does not constitute proof of objectively dangerous conditions that would pose a substantial risk of the type of physical altercation that occurred between plaintiff and inmate Pickens on July 1, 2017.[3] Plaintiff has shown no more than a generalized concern for his safety and has not established that defendant Holley knew of an impending assault on plaintiff by Inmate Pickens by virtue of his knowledge of the unwelcome sexual acts. *See e.g.*, *Drayton v. Cohen*, No. CA 2:10-3171, 2012 WL 666839, at *7 (D.S.C. Feb. 29, 2012) (plaintiff who reported to correctional officers that his cellmate was masturbating in front of him and became verbally abusive when confronted about it did not establish that his cellmate posed a "substantial risk of serious harm"), *aff'd*, 474 F. App'x 991 (4th Cir. 2012).

Plaintiff has likewise failed to satisfy the subjective component of his Eighth Amendment failure to protect claim against defendant Holley. Plaintiff has failed to establish that defendant Holley consciously disregarded an attack by inmate Pickens by failing to take reasonable measures to abate it. On the contrary, the evidence establishes that defendant Holley responded to the situation immediately and went to plaintiff and Inmate Pickens' cell after being informed of the situation from an inmate porter. (Holley Declaration, Doc. 55-1 at ¶ 10). When he arrived at the cell, defendant Holley observed plaintiff and Inmate Pickens in a wrestling-type hold, but

---

[3] Plaintiff also argues that defendants failed to follow procedures under the Prison Rape Elimination Act ("PREA"). As plaintiff makes no allegations in his complaint regarding PREA and because district courts have found that PREA "does not create a private cause of action which can be brought by an individual plaintiff," *see Montgomery v. Harper*, No. 5:14CV-P38, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014), plaintiff's argument is foreclosed.

any attack was already complete, and no punches were being thrown. (*Id.* at ¶¶ 14, 16). Via the food-cuff port outside the cell door, defendant Holley commanded both inmates to separate, threatening to use OC spray if they did not comply. (*Id.* at ¶ 18). The inmates separated upon defendant Holley's command. (*Id.* at ¶ 19). Consistent with institutional procedures that do not permit an officer to open a cell door in the R block without another officer present and without the inmates in restraints, within fifteen seconds, defendant Holley called for restraints, a relief officer, and a supervisor to respond to the cell. (*Id.* at ¶¶ 20-21, 27). Relief Officer McNally responded to the cell within approximately three minutes and noticed the inmates had already separated. Officer McNally witnessed defendant Holley open the cell door as soon as he and a supervisor arrived. (*Id.* at ¶ 28; McNally Declaration, Doc. 55-2 at ¶ 7). Overall, the evidence establishes that defendant Holley immediately responded to the altercation between plaintiff and Inmate Pickens, did not witness an attack while standing outside the cell door, successfully instructed the inmates to separate, and followed institutional procedures by immediately calling for restraints, a relief officer, and a supervisor, who arrived at the cell within approximately three minutes. *See Farmer*, 511 U.S. at 544 ("prison officials . . . may be found free from liability if they responded reasonably to the § 1983 risk, even if the harm ultimately was not averted.").

Plaintiff's statement—that defendant Holley "was just standing waiting on help to come instead of getting this guy's teeth out of the plaintiff's ear and being on the job"—does not establish a genuine issue of fact as to whether defendant Holley disregarded the attack. Implicit in plaintiff's statement is an admission that defendant Holley responded to plaintiff's cell and in fact called for assistance. In compliance with institutional rules, defendant Holley did not open the cell door until other correctional officers arrived on the scene. This does not establish deliberate indifference to plaintiff's safety. *Dillard v. Oosterhof*, No. 2:19-cv-10089, 2019 WL

14

414950, at *3 (E.D. Mich. Feb. 1, 2019) ("The allegation that [the defendant correctional officer] waited for backup indicates that he did not disregard the attack on Plaintiff but took action in calling for backup to stop the attack when he became aware of it."). *Cf. Long v. Sanders*, No. 09-11021, 2010 WL 1286313, at *5 (E.D. Mich. Feb. 22, 2010) (Report and Recommendation) (denying summary judgment to defendants who failed to intervene in inmate-on-inmate attack before backup arrived, noting that "they have submitted no evidence that they attempted to end the assault on Plaintiff in any other manner, i.e., issuing a verbal command or convincing [inmate assailant] otherwise to end the assault."), *adopted*, 2010 WL 1286312 (E.D. Mich. Mar. 29, 2010).

To the extent plaintiff argues that defendant Holley was deliberately indifferent by failing to physically enter the cell to subdue Inmate Pickens, the Court must defer to LeCI procedures that do not permit an officer to open a cell door in the R block without another officer present and without the inmates in restraints. (Holley Declaration at ¶ 27). *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Moreover, the evidence shows that when defendant Holley arrived, he observed plaintiff and Inmate Pickens in a wrestling-type hold, but the altercation had already ended and no punches were observed. (Holley Declaration at ¶¶ 14, 16). Defendant Holley effectively prevented any further harm by ordering the inmates to separate and threatening to use OC spray if they did not comply. (*Id.* at ¶¶ 18-19). Accordingly, because the evidence establishes that defendant Holley was not deliberately indifferent to a known risk of harm to plaintiff and responded quickly and

reasonably to the attack, defendant Holley did not violate plaintiff's Eighth Amendment rights and summary judgment should be granted in his favor.

## VI. Claims against Defendant Heyd

Plaintiff also brings Eighth Amendment claims against defendant Timothy Heyd, M.D., alleging that he was "grossly negligent by not giving [plaintiff] proper pain medications" after his eye and ear surgery at the Ohio State University Medical Center. (Doc. 7 at 4). On August 8, 2018, the undersigned recommended that plaintiff's motion to substitute and serve Michael V. Drake, president of The Ohio State University, be denied as futile. (Doc. 46 at 10). The District Judge adopted the Report and Recommendation on August 22, 2018. (Doc. 48). To date, the docket reflects that defendant Heyd has not been properly served in this action. Plaintiff served the Ohio State University Medical Center on March 25, 2018; however, he did not serve Dr. Timothy Heyd. In its response to plaintiff's "motion for monetary judgment," defendants indicated that there is a Dr. Timothy Heyd employed by ODRC and it is unclear whether plaintiff attempted to serve the Dr. Heyd employed by ODRC or if he is trying to serve an Ohio State University physician he incorrectly identified. (Doc. 44).

Fed. R. Civ. P. 4 (c) and (d) require that a defendant be served with a summons and a copy of the complaint or that defendant waive service thereof. Rule 4 also provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). Proper service of process is required in order for this Court to obtain in personam jurisdiction over a defendant. *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003). Plaintiff bears the burden to establish good cause for his failure to

timely serve the summons and complaint on a defendant. *Habib v. General Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). *See also Byrd v. Stone*, 94 F.3d 217 (6th Cir. 1996). In the absence of a showing of good cause justifying the failure to timely serve a defendant, the Court may either dismiss the complaint without prejudice or direct that service of process be effected within a specified time. Fed. R. Civ. P. 4(m). *See also Henderson v. United States*, 517 U.S. 654, 662-63 (1996).

Plaintiff has not shown good cause for his failure to properly serve Dr. Heyd in this matter. More than 90 days have passed since the filing of plaintiff's complaint in August 2017. In addition, in April and August 2018, plaintiff received defendants' response to his "motion for monetary judgment" indicating the deficiencies with service on Dr. Heyd, as well as this Court's order denying his request to substitute and serve Michael V. Drake as a defendant. (Docs. 44, 48). Plaintiff had notice that defendant Heyd had not been properly served, and he has neither attempted to perfect service on defendant Heyd nor mentioned his claims against defendant Heyd in subsequent filings. (*See* Docs. 57, 61). Accordingly, it is **RECOMMENDED** that plaintiff's claims against defendant Heyd be dismissed for lack of service.

**VII. Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendant Holley's motion for summary judgment (Doc. 55) be **GRANTED**.[4]

2. Plaintiff's claims against defendant Heyd be **DISMISSED** for lack of service.

---

[4] Defendant Holley also argues that he is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court need not address whether defendant Holley is entitled to qualified immunity because the record shows there is no genuine dispute as to whether defendant Holley violated plaintiff's Eighth Amendment rights, and defendant Holley is therefore entitled to summary judgment.

3. This case be **CLOSED** on the docket of this Court.

4. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 3/4/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIEL P. HARGROVE,
    Plaintiff,

vs.

CO HOLLEY, et al.,
    Defendants.

Case No. 1:17-cv-560

Cole, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).